UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE GILLESPIE COLEMAN, | |
|    Petitioner, | |
|         v. | Civil No. 14-cv-1066-JPG |
| UNITED STATES OF AMERICA, | Criminal No. 11-cr-40011-JPG |
|    Respondent. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Joe Gillespie Coleman's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  On December 4, 2012, a jury found the petitioner guilty of one count of disposing of ammunition to a convicted felon in violation of 18 U.S.C. § 922(d).  On March 31, 2013, the Court sentenced the petitioner to serve seven months in prison.  The petitioner appealed his sentence, but on October 4, 2013, the Court of Appeals dismissed Coleman's appeal pursuant to his request.  Coleman is currently serving a term of supervised release.

**I.	§ 2255 Motion**

In his timely § 2255 motion, Coleman argues that his counsel, James I. Karraker, was constitutionally ineffective in violation of his Sixth Amendment right to counsel when he:

> Ground 1:	Failed to observe professional standards in a number of ways;
>
> Ground 2:	Abandoned the petitioner on appeal;
>
> Ground 3:	Failed to argue that a statement the petitioner made was obtained by law enforcement while the defendant was mentally unstable and to present expert medical witnesses in support of that argument; and
>
> Ground 4:	Failed to call Wilbur Collier, who was present at trial and available to provide exculpatory evidence.

In an order dated October 29, 2014 (Doc. 2), the Court determined that it was plain from the motion and the record of the prior proceedings that the petitioner is not entitled to relief on Ground 1.  *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.   The Court ordered the Government to respond to Grounds 2-4, which it has done (Docs. 3 & 4).

**II.     Analysis**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255.   However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations."  *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).   "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice."  *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).   The Court declines to hold a hearing on Grounds 2-4 of Coleman's motion because, as explained below, the records of the case clearly demonstrate he is entitled to no relief on those grounds.

In his § 2255 motion, Coleman alleges he received ineffective assistance of counsel in violation of the Sixth Amendment.   The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the

right to *effective* assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).   A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.  *Wyatt*, 574 F.3d at 458.  The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance.  *Id.*  The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458.  Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record.  *Strickland*, 466 U.S. at 689.  The Court cannot become a "Monday morning quarterback."  *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915; *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006).  "A reasonable probability is defined as one that is sufficient to undermine confidence in

3

an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

    A.    <u>Ground 2: Abandonment on Appeal</u>

Coleman claims Karraker, who served as his counsel at trial and sentencing, was constitutionally ineffective because he failed to assist Coleman in filing a notice of appeal after his conviction and failed to respond to multiple orders from the Court of Appeals. The Government responds that Coleman was not prejudiced by any deficient performance.

It is highly likely that Karraker was deficient in his representation of Coleman in connection with the appeal of Coleman's criminal case. Karraker did not file a timely notice of appeal on Coleman's behalf. Instead, Coleman was forced to file a notice *pro se* and seek permission of the Court to file it beyond the deadline. On appeal, Karraker failed to respond to several orders from the Court of Appeals and was eventually required to show cause why he should not be disciplined for abandoning Coleman on appeal. The Court of Appeals eventually discharged Karraker and appointed Coleman new counsel, who, with Coleman's consent, moved to voluntarily dismiss Coleman's appeal. Coleman does not complain about his new counsel's performance.

While Karraker was likely deficient in his performance on appeal, Coleman suffered no prejudice from that performance. Despite Karraker's failure to file a notice of appeal, the Court allowed Coleman to file a late *pro se* notice. After the appeal had been filed, Coleman eventually received advice from competent counsel and agreed to voluntarily dismiss his appeal. Any taint from Karraker's deficient performance was removed by the Court's decision to allow Coleman's late *pro se* appeal and by his eventual representation by competent counsel. Thus, the proceedings were not reasonably likely to have ended in a different result had Karraker's

performance not been deficient. Because Coleman suffered no prejudice from Karraker's performance in connection with his appeal, Coleman is not entitled to § 2255 relief on this basis.

      B.      <u>Ground 3:   Coleman's Statement to Law Enforcement</u>

Coleman argues Karraker was constitutionally ineffective because he (1) failed to argue that an incriminating videotaped interview Coleman gave was obtained by law enforcement while Coleman was mentally unstable and (2) failed to present expert medical testimony from Dr. Randall L. Stahly, Coleman's neurologist, in support of that argument. With his § 2255 motion, Coleman has provided letters from Dr. Stahly indicating that inconsistencies and "lapses" in Coleman's videotaped statement could have been attributable to a seizure the prior day, that it appears Coleman may suffer from a period of sleepiness, difficulty in processing, confusion and memory loss for more than 24 hours after a seizure, and that Coleman may suffer from "transient confusion episodes or post ictal problems with recall and amnesia in addition to difficulty with processing information, confusion and memory loss." He has also provided a letter from Dr. Linda J. Finn, a psychologist, stating that Coleman suffers from anxiety and memory problems.

The Government notes that Karraker *did* argue Coleman's mental condition at the time of his statement and that it was reasonable trial strategy not to call the expert medical witness in person because his testimony would have been cumulative and risked inviting closer review of the incriminating videotaped interview, in which Coleman did not appear mentally unstable.

The evidence at trial showed that, after receiving information indicating that Coleman had provided ammunition to convicted felon Walter Collier, law enforcement interviewed Coleman. In the videotaped interview, Coleman admitted that he knew Collier, knew he was a convicted felon, provided him ammunition, and knew that giving Collier the ammunition was illegal because

5

Collier was a convicted felon. The videotape was played to the jury during trial. Trial Tr. at 32. In the Court's opinion, Coleman appeared alert and did not appear confused or mentally unstable during the interview.

Karraker attempted to convince the jury that Coleman's videotaped statement was not reliable because of his mental state at the time of the alleged criminal conduct and at the time he was interviewed by law enforcement. In fact, that was one of Karraker's main arguments in Coleman's defense. To that end, Karraker questioned Coleman's wife about his history of epilepsy. She testified that his seizures left him "spaced out," "totally confused," "disoriented," unable to "comprehend a lot of things," and "groggy" for days afterward.. Trial Tr. at 72, 74-75. She further testified that Coleman had had a seizure the day before his interview and did not "appear to be himself" during the interview. Trial Tr. at 80. Karraker also elicited testimony from Coleman himself that during interview he was suffering loss of memory and confusion and that he had had difficulty understanding the law enforcement officer's questions as a consequence of the seizure he had had the night before. Trial Tr. at 140-44. He also testified he was suffering similar disabilities on the date of the charged offense. Trial Tr. at 165. Karraker also submitted a written report from Dr. Stahly regarding the mental state of individuals recovering from seizures, Trial Tr. at 153, and other lay evidence that Coleman was "on the cusp of an attack" before he spoke with law enforcement in the videotaped interview, Trial Tr. at 176. Finally, he highlighted in his closing argument the evidence showing that Coleman was simply confused during his interview due to his seizure the day before.

It is clear that Karraker's performance was not deficient for failing to argue Coleman's mental state during the videotaped interview. On the contrary, Karraker made a valiant effort

well within the scope of competent representation to convince the jury that the interview statement was unreliable because Coleman was too confused at the time to speak the truth or to know what he was saying.  Coleman speculates that had Karraker actually called Dr. Stahly to testify in person, as opposed to offering a written report, the jury would have been persuaded to disregard Coleman's videotaped interview.  That appears highly unlikely in light of the fact that Coleman did not appear to the Court to be confused or to be suffering from a loss of memory in the interview.  Coleman has not provided any indication Dr. Stahly would have been able to testify specifically about Coleman's mental condition on the date of the interview, and his general testimony about the effects of Coleman's seizures on his mental condition would have been cumulative of the testimonial and documentary evidence already admitted.  There is simply no reason to believe live testimony from Dr. Stahly would have had a reasonable chance of causing the jury to disregard Coleman's statement where his written report and other testimony from live witnesses did not.  Furthermore, the decision to call a live witness risked inviting further attention to Coleman's incriminating statements, similar to the Government's cross examination of Coleman that highlighted in an excruciatingly repetitive manner the particularly damaging portions of that interview.  Thus, the failure to call Dr. Stahly as a live witness was a reasonable trial strategy and did not prejudice Coleman's case.

    C.    <u>Ground 4:   Witness Wilbur Collier</u>

Coleman argues Karraker was constitutionally ineffective because he failed to call Collier to testify although he was available in the courthouse holding cell and was willing to testify. Collier had informed Karraker he would have testified that Coleman had not given him the ammunition for which he was charged.  Based on this expected testimony, Karraker had obtained

Collier's presence at the courthouse for the trial.   The Government maintains that Karraker's decision not to call Collier was reasonable.   Karraker knew Collier had given a videotaped statement shortly after receiving the ammunition in question and stated, consistent with Coleman's interview, that he had gotten the ammunition from Coleman.   Had Collier testified to the contrary, the Government would have been able to play some or all of Collier's incriminating videotaped interview to the jury.

The Court has reviewed Collier's interview and finds that Karraker's trial strategy to keep that evidence from the jury and instead to concentrate on discrediting Coleman's own interview was within the realm of reasonably competent counsel.   Collier's manner of speaking in his interview appeared credible, his statements were consistent, and he would likely have been compelling to a jury.   His interview would have risked reinforcing the credibility of Coleman's incriminating statements.   Furthermore, Collier's live testimony, as a convicted felon, would have been unlikely to convince the jury that his earlier videotaped statement and Coleman's incriminating statement were untrue.   It was reasonable for Coleman to keep Collier from the jury.

Because Karraker's performance was not deficient, Coleman is not entitled to § 2255 relief for the failure to call Collier as a witness.

### III.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28

U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").   The Court finds that Coleman has not made such a showing and, accordingly, declines to issue a certificate of appealability.

**IV.**     **Conclusion**

For the foregoing reasons, the Court **DENIES** Coleman's § 2255 motion (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.   The Court further **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**
DATED:   December 8, 2014

                                                       s/J. Phil Gilbert
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**